**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

NANCY JACOBINI

        Plaintiff,

v.

                                        Case No. 6:11-cv-231-Orl-19-GJK

J.P. MORGAN CHASE N.A. and
CHASE HOME FINANCE LLC
        Defendants

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 8(a) AND 12(b)(6), TO DEFENDANTS' MOTION TO STRIKE UNDER 12(f), AND INCORPORATED MEMORANDUM OF LAW

NOW COMES the Plaintiff, Nancy Jacobini ("Jacobini"), and hereby opposes the Defendants' (collectively "Chase") Motion to Dismiss pursuant to Fed. R. Civ. P 8(a) and 12(b)(6). Additionally, the Plaintiff hereby opposes the Defendants' motion pursuant to Fed. R. Civ. P. 12(f) to strike her claims for punitive damages on all counts.  The Plaintiff states the following as her grounds for her opposition.

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

STATEMENT OF RELEVANT FACTS .................................................................1

ARGUMENT..................................................................................................................3

A.   Under Fed. R. Civ. P. 12(b)(6), Plaintiff's First Amended
     Complaint Meets The Standard To Survive A Motion To Dismiss..............................3

B.   No Objection To This Court Dismissing All Charges Against
     Chase Home Finance, LLC...........................................................................................4

C.   Plaintiff's Negligence Claims State Viable Claims As A Matter Of
     Law And Should Not Be Dismissed .............................................................................4

     1.   Plaintiff's claims for negligence and negligent infliction of
          emotional distress are not barred by the economic loss rule
          because Jacobini pled the breach of an independent duty
          and the underlying policy of the economic loss rule does
          not apply.........................................................................................................4

     2.   Plaintiff's negligence claims are separate and distinct from
          her intentional tort claims and are supported by Florida law............................8

     3.   The impact rule does not bar the Plaintiff's negligence
          claims ..............................................................................................................9

D.   Plaintiff's Claims For Invasion Of Privacy And Intentional
     Infliction Of Emotional Distress Should Not Be Dismissed ......................................11

     1.   Plaintiff's claim for invasion of privacy should not be
          dismissed because there is no requirement that Chase's
          physical invasion be considered extreme and outrageous
          because it was a physical invasion into her home............................................11

     2.   Plaintiff's intentional infliction of emotional distress claim
          should not be dismissed because this Court should find
          Chase's actions extreme and outrageous as a matter of law ...........................12

E.      Plaintiff's Claim Based Upon The Violation Of Florida Consumer
        Protection Act Should Not Be Dismissed Because There Is An
        Issue Of Material Fact....................................................................................................15

F.      Plaintiff's Tort Claims Do Not Fail Because She Has Not Alleged
        "At Most" An Independent Contractor Relationship.....................................................17

        1.      Plaintiff's vicarious liability claims do not fail because the
                pled allegations properly put forth the issue of whether the
                contractors acted as Chase's servants or as its independent
                contractors to the fact finder and even if the intruders acted
                as independent contractors, Chase is still vicarious liable
                for their actions .................................................................................................17

        2.      Plaintiff's vicarious liability claims also do not fail because
                Plaintiff properly pled her vicarious liability claims against
                Chase...................................................................................................................19

G.      Plaintiff's Claims For Punitive Damages Should Not Be Dismissed
        Because The Complaint Properly alleges Fault As To Chase And
        Also Alleges Independent Torts Accompanying The Breach Of
        Contract Claims .............................................................................................................20

CONCLUSION.................................................................................................................................22

## CASES

Allstate Ins. Co. v. Ginsburg, 863 So.2d 156, 162 (Fla. 2003)..................................................11

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).........................................................................3

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) ................................................................3

Borden v. Saxon Mortg. Serv., Inc., No. 08-61851-CIV, 2010 U.S. Dist. LEXIS
101823 (S.D. Fla. 2010)..................................................................................................15

Burch v. Strange, 126 So. 898, 899 (5th DCA 1961) .................................................................18

City of Miami v. Sanders, 672 So.2d 46, 48 (Fla. 3d DCA 1996).............................................8

Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1298 (M.D. Fla.
2010) .................................................................................................................................6

Dependable Life Ins. Co. v. Harris, 510 So. 2d 985, 988, 988 n. 7 (Fla. 5th DCA
1987) ...............................................................................................................................14

Excess Risk Underwriters, Inc. v. LaFayette Life Ins. Co., 208 F. Supp. 2d
1310,1315 (S.D. Fla. 2002)...............................................................................................5

Gonzales-Jimenez De Ruis v. U.S., 231 F. Supp. 2d 1187, 1200 (M.D. Fla. 2002) ...............15

Gracey v. Eaker, 837 So.2d 348, 355 (Fla. 2002)....................................................................10

Griffith v. Shamrock Village, Inc., 94 So. 2d 854, 858 (Fla. 1957) ........................................21

Guin v. Riviera Beach, 388 So. 2d 604, 606 (Fla. 4th DCA 1980) .........................................12

Horizon Leasing v. Leefman, 568 So. 2d 73, 75 (Fla. 4th DCA 1990)....................................21

HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla.
1996) .................................................................................................................................6

Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla.
2004) .................................................................................................................................4

Jackson v. Okaloosa Cnty. Fla., 21 F.3d 1531, 1534 (11th Cir. 1994)....................................4

Kush v. Lloyd, 616 So. 2d 415, 422 (Fla. 1992)........................................................................9

Losure v. Capital One Services, Inc., No. 2:05-cv-502-FtM-29SPC, 2006 U.S.
     Dist. LEXIS 3977 (M.D. Fla. 2006) ..............................................................16

Mercury Motors Express, Inc. v. Smith, 393 So. 2d 545, 549 (Fla. 1981)..............................20

Met. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985)......................................13

Miami Herald Pub'l Co. v. Brown, 66 So.2d 679, 681 (Fla. 1953).........................................10

Monroe v. Saratosa County School Board, 746 So. 2d 530, 537 (Fla. 2d DCA
     1999) .................................................................................................................5

National Rating Bureau v. Florida Power Corp., 94 So. 2d 809, 812 (Fla. 1957)...................18

Oppenheim v. I.C. Sys. Inc., 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010) ...........................12

Pershing Industries, Inc. v. Sanz, 740 So. 2d 1246, 1248 (Fla. 3d DCA 1999) .......................6

Renfrow v. First Mortg. Am., Inc., No. 08-80233-CIV, 2011 U.S. Dist. LEXIS
     63392 (S.D. Fla. 2011)...................................................................................16

Rotis v. M & I Marshall & Isley Bank, No. 8:10-cv-446-T-23EAJ, 2010 U.S.
     Dist. LEXIS 109074 (M.D. Fla. 2010) ............................................................8

Rowell v. Holt, 850 So. 2d 474, 478 (Fla. 2003)......................................................................9

Schauer v. General Motors Acceptance Corp., 819 So.2d 809, 812 (Fla. 4th DCA
     2002) ...............................................................................................................16

Secondo v. Campbell, 327 Fed.Appx. 126, 131 (11th Cir. 2009) .............................................8

Silver v. Countrywide Home Loans, Inc., No. 09-60885-CIV-
     SEITZ/O'SULLIVAN, 2011 U.S. Dist. LEXIS 5664 (S.D. Fla. 2011) ........................8

Simon v. Nat'l City Mortg. Co., No. 2:09-cv-376-FtM-29DNF, 2010 U.S. Dist.
     LEXIS 48024 (M.D. Fla. 2010)......................................................................5

Time Ins. Co. v. Burger, 712 So.2d 389, 393 (Fla. 1998) ......................................................10

U.S. ex rel. Crenshaw v. Degayner, 622 F. Supp. 2d 1258, 1283 (M.D. Fla. 2008) ...............14

U.S. ex rel. Oreo Debris, Inc. v. Ashbritt, No. 09-20458-CIV-TORRES, 2010
     U.S. Dist. LEXIS 7561 (S.D. Fla. 2010).........................................................21

Vernon v. Med. Mgmt. Assocs. of Margate, Inc., 912 F.Supp. 1549, 1561 (S.D. Fla. 1996) .................................................................................................................11

Ward v. Casual Rest. Concepts Inc., No. 8:10-cv-2640-T-17TGW, 2011 U.S. Dist. LEXIS 69712 (M.D. Fla. 2011) ..........................................................................12

Weimar v. Yacht Club Point Estates, 223 So. 2d 100, 103 (Fla. 1969).....................................5

Wynkoop v. Wells Fargo Home Mortg., Inc., No. 11-60392-CV-COHN, 2011 U.S. Dist. LEXIS 57417 (S.D. Fla. 2011)........................................................................8

Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 857 (Fla. 2007) (concurring opinion)............................................................................................................9

**STATUTES**

Fed. R. Civ. P. 12(b)(6)............................................................................................................3

Fed. R. Civ. P. 8(a)(2)..............................................................................................................3

FLA. STAT. § 83.59 (2011) ...............................................................................14 n. 1

FLA. STAT. § 83.67(6)-(8) (2011)......................................................................14 n.1

FLA. STAT. § 501.202(2) (2011) ............................................................................16

FLA. STAT. § 501.203(8) (2011)............................................................................16

FLA. STAT. § 501.204(1) (2011)............................................................................16

FLA. STAT. § 776.012 (2011) ................................................................................13

FLA. STAT. § 776.013(3) (2011)............................................................................13

FLA. STAT. § 776.032 (2011) ................................................................................13

**RESTATEMENT**

Restatement (Second) of Torts §46 (1965)...............................................................13

## INTRODUCTION

Jacobini, a single woman and Florida homeowner, filed this lawsuit against Chase seeking redress for Chase breaking into her home prior to the filing of a foreclosure or obtaining a court order of any kind.  On September 28, 2010, Jacobini sat in her home alone. She heard an individual at the front door attempting to break into her home.  She immediately locked herself in her bathroom and called 911.  The Orange County Sheriff's Office arrived and upon apprehension of the individual, discovered that Chase hired the intruder as a contractor to "secure" her home.  Jacobini brings this federal lawsuit against Chase to remedy the damage caused and to prevent future break-in's such as this from occurring.

## STATEMENT OF RELEVANT FACTS

On or about September 17, 2002, Jacobini executed a mortgage for $72,750 from Professional Mortgage Services of Central Florida.  FAC ¶ 9; Ex. 1, Pl.'s Note; Ex. 2, Pl.'s Mortgage.  Chase currently holds Jacobini's Note and Mortgage.  FAC ¶ 9.  The mortgage states in relevant part:

> "Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause."

Ex. 2. Pl.'s Mortgage ¶ 7.

Jacobini has lived at the home for 15 years.  FAC ¶ 8.  On or about May 2010, Jacobini fell behind on her mortgage payments after she lost her job.  FAC ¶ 10.  During all material times, Chase did not file any foreclosure proceedings against the property, nor

served Jacobini with a foreclosure lawsuit or court order of any kind.  FAC ¶ 10.  Jacobini

had no notice, warning, or reason to believe that any agent of Chase would come to her

property.  FAC ¶ 10.  During this time Jacobini's application for a Federal Home Affordable

Modification Program  ("HAMP") Loan modification was under review.  FAC ¶ 10.  Chase,

as a participating lender in the HAMP program, could not foreclose on the property until the

HAMP program had been certified as completed.  FAC ¶ 11.  Jacobini has lived at the home

for 15 years and at all time, she has kept the home well maintained and fully furnished.  FAC

¶ 8.  Moreover, at all relevant times, the house was occupied, the utilities were on, and

Jacobini lived in the home.  FAC ¶ 15.

On September 28, 2010, Jacobini arrived home from her new job.  FAC ¶ 12.  While

she sat alone in her home she heard an individual attempting to break into the home through

the front door.  FAC ¶ 12.  Upon hearing this, Jacobini locked herself in her bathroom and

called 911 to report the intruder.  FAC ¶ 13.  The Orange County Sheriff's Office arrived to

her home and apprehended the intruder.  FAC ¶ 14.  The Sheriff's office learned that the

intruder was a contractor sent to the home by Chase to change the locks in a pre-foreclosure,

self-help attempt to "secure" the premises.  FAC ¶ 15.

After this break in, Jacobini moved a large piece of furniture against her front door in

hopes of blocking future intrusions out of fear for her own safety.  FAC ¶ 18.  On April 21,

2011, seven months after this first incident, Chase sent another contractor to the home to

"secure" the premises; again without the filing of a foreclosure lawsuit, without a court order,

and without giving any notice.  FAC ¶ 1, 19.  Jacobini again called the police in this instance

because the contractor broke into her home.  FAC ¶ 20.  Jacobini was transported to a

hospital to receive medical treatment for the immense panic and anxiety caused by this second intrusion.  FAC ¶ 20.

To remedy the damage caused by Chase and its contractors, the Plaintiff brings nine causes of actions:  trespass (Count 1); negligence (Count 2); negligent infliction of emotional distress (Count 3); intentional infliction of emotional distress (Count 4); breach of contract (Count 5); breach of the duty of good faith and fair dealing (Count 6); invasion of privacy (Count 7); violations of Florida's consumer protection statutes (Count 8); and negligent hiring (Count 9).

## ARGUMENT

### A.    Under Fed. R. Civ. P. 12(b)(6), Plaintiff's First Amended Complaint Meets The Standard To Survive A Motion To Dismiss.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In order to state a claim, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  At such an early stage in litigation, a court must consider the factual allegations in the Complaint as true, and accept all

reasonable inferences therefrom. Jackson v. Okaloosa Cnty. Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).

**B.      No Objection to Chase Home Finance, LLC being dismissed**

Jacobini does not object to dismissing all Counts against Chase Home Finance, LLC because it does not exist.

**C.      Plaintiff's Negligence Claims State Viable Claims As A Matter Of Law And Should Not Be Dismissed.**

As a threshold matter, Jacobini's negligence (Count 2) and negligent infliction of emotional distress (Count 3) are not barred by the economic loss rule. Additionally, Jacobini's negligence claims (Count 2, 3) do not fail to state a claim upon which relief can be granted because 1) she pled distinct negligent acts separate from the pled intentional torts and 2) the impact rule does not bar her negligence claims.

**1.      Plaintiff's claims for negligence and negligent infliction of emotional distress are not barred by the economic loss rule because Jacobini pled the breach of an independent duty and the underlying policy of the economic loss rule does not apply.**

In Florida, the economic loss rule is a judicially created doctrine that controls in what circumstances a plaintiff can recover solely economic losses via tort action. Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004). Courts impose the economic loss rule in two distinct circumstances: where the parties are in contractual privity and one party seeks to recover economic losses in tort for matters arising from contract and in the products liability context. Id. at 536 n. 1 (citation omitted). Economic losses are "disappointed economic expectations . . . [such as] damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any

4

claim of personal injury or damage to other property." Excess Risk Underwriters, Inc. v. LaFayette Life Ins. Co., 208 F. Supp. 2d 1310,1315 (S.D. Fla. 2002). Simply put, economic damages refer to the "loss of the 'benefit of the bargain.'" Am. Aviation, 891 So. 2d at 536 n.1 (citation omitted).

The underlying policy in applying the economic loss rule to tort actions involving parties in contractual privity is the assumption that the parties to a contract have already allocated the economic risks of nonperformance through the bargaining process. Am. Aviation, 891 So. 2d at 536. Thus, the economic loss rule protects against a party to a contract from "seeking to obtain a better bargain than originally made" through tort actions. Id.; see also Monroe v. Saratosa County School Board, 746 So. 2d 530, 537 (Fla. 2d DCA 1999) (reiterating underlying policy of economic loss rule) ("[C]ontract law and negligence law would tend to merge and there would be no reason for private parties to bargain for private remedies.").

Therefore, the economic loss rule does not automatically prevent a plaintiff from bringing about a tort action even in the same circumstances as a breach of contract action. See, e.g., Weimar v. Yacht Club Point Estates, 223 So. 2d 100, 103 (Fla. 1969). But see Excess Risk Underwriters, 208 F. Supp. 2d at 1316 (stating that "tort claims are barred when they are interwoven with the facts establishing a breach of contract"); Simon v. Nat'l City Mortg. Co., No. 2:09-cv-376-FtM-29DNF, 2010 U.S. Dist. LEXIS 48024, at *16 (M.D. Fla. 2010) (pointing out that the plaintiff based his tort claims on "literally" the same facts as the breach of contract claim). The economic loss rule does not bar a plaintiff's intentional or

negligent tort actions if they are independent from the contractual breach. Am. Aviation, 891 So. 2d at 538, quoting HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996). To determine whether the economic loss rule bars negligence-based torts, the "true question" is whether the defendant breached an independent duty or whether the duty pled arises from the contract between the parties. Weimar, 223 So. 2d at 103.

In the present case, while Jacobini is in contractual privity with Chase, the economic loss rule should not bar her negligence and negligent infliction of emotional distress claims because these negligence-based claims are based upon Chase's independent duty and therefore, they fall outside the scope of the contractual breach between the parties. See Pershing Industries, Inc. v. Sanz, 740 So. 2d 1246, 1248 (Fla. 3d DCA 1999) (holding that economic loss rule did not apply to plaintiff's tort claims because they fell outside of the contract). Jacobini's complaint states that Chase had a duty to "act as a reasonable and prudent lender . . . when instituting property inspections and/or during any foreclosure proceedings." FAC Ct. 2, 3. This duty refers to the general duty imposed on Chase as a mortgagee and not from the specific contract between the parties. See Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1298 (M.D. Fla. 2010) (finding that mortgagee owed mortgagor a general duty of reasonable care despite contract between the parties); Monroe, 746 So. 2d at 537 (stating that a Plaintiff needs only an independent duty based on "broader social policies"). Thus, the pled duty that Chase breached in the two negligence-based claims is properly independent from any contractual duties because it arises from sound social policy and not the contract between the parties. See Ginsberg, 645 So. 2d at 495 (applying economic loss rule because the plaintiff's tort claims encompassed the

defendant's specified duties as "property manager" present in the contract); Excess Risk Underwriters, 208 F. Supp. 2d at 1316 (applying economic loss rule because Plaintiff's alleged fiduciary duty arose specifically from the confidentiality agreement signed between the parties as part of the overall agreement). Therefore, Jacobini properly pled a duty independent of that arising from the contract between the parties.

Additionally, the economic loss rule should also not bar Jacobini's negligence-based claims because she is not attempting to circumvent the contract between the parties and the break-ins were acts of other parties accomplished at Chase's directions. See Am. Aviation, 891 So. 2d at 536. The damages sought in Jacobini's negligence and negligent infliction of emotional distress claims arise from Chase sending in two contractors at two distinct times to break into her home without permission or authorization. The damages sought under the negligence-based claims include the property damage, as well as the emotional distress, caused by the contractor's breaking and entering. These damages constitute harm above any disappointed economic expectations. See Excess Risk Underwriters, 208 F. Supp. 2d at 1315 (stating that there must be a showing of harm "above and beyond disappointed expectations" for recovery in tort). Therefore, Jacobini is not attempting to circumvent the contractual relationship between the parties because the damages pled in her negligence-based claims refer to damages independent from any contractual breach damages and are not solely "disappointed economic expectations" stemming from a material breach of the parties' contract. See id.; Ginsberg, 645 So. 2d at 494-95 (stating that "[w]here damages sought in tort are the same as those in breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort"); see also Simon, 2010 U.S. Dist. LEXIS at *15-6

(applying economic loss rule because plaintiff attempted to bring tort action for solely disappointed economic expectations).

Moreover, Jacobini is not attempting to circumvent the contract between the parties because the contract did not allocate the property and emotional damages stemming from a contractor breaking and entering into her home.  See Silver v. Countrywide Home Loans, Inc., No. 09-60885-CIV-SEITZ/O'SULLIVAN, 2011 U.S. Dist. LEXIS 5664, at *18 (S.D. Fla. 2011) (applying economic loss rule because plaintiff attempted to circumvent contract in predatory mortgage allegation where contract sufficiently allocated the economic loss alleged); Rotis v. M & I Marshall & Isley Bank, No. 8:10-cv-446-T-23EAJ, 2010 U.S. Dist. LEXIS 109074, at * 11 (M.D. Fla. 2010) (stating that plaintiff who contracted to bear the risk of default could not sue defendant in tort to avoid this already agreed upon risk).  Therefore, the economic loss rule should not bar Jacobini's negligence-based claims because she is not attempting to circumvent the contractual agreement between the parties.  See Wynkoop v. Wells Fargo Home Mortg., Inc., No. 11-60392-CV-COHN, 2011 U.S. Dist. LEXIS 57417, at *11 (S.D. Fla. 2011) (not applying the economic loss rule to plaintiff's tort claims because the "principle behind [the economic loss rule did] not apply").

### 2. The Plaintiff's negligence claims are separate and distinct from her intentional tort claims and are supported by Florida law.

Florida recognizes that a separate negligence claim based on a distinct act of negligence may be brought in conjunction with an intentional tort claim.  City of Miami v. Sanders, 672 So.2d 46, 48 (Fla. 3d DCA 1996); see also Secondo v. Campbell, 327 Fed.Appx. 126, 131 (11th Cir. 2009).  While it may not be possible to negligently commit an

8

intentional tort, Chase incorrectly argues Jacobini bases each of her claims on the same intentional and unauthorized entries into her property and therefore, Jacobini's negligence claims must fail. Def.'s Mot. Dismiss 14.  This is incorrect because Jacobini's claim of trespass is just one of her complaints against Chase and she alleges separate conduct against Chase that amounts to negligence.  Specifically, Jacobini alleges that Chase failed to act as a reasonable and prudent lender or servicer when ordering property inspections and by failing to verify that it had the legal right to enter onto the premises. FAC Ct.'s 2,3.  Thus, this Court should deny Chase's motion to dismiss because Jacobini alleges separate negligence claims based upon distinct negligent acts and merely brings these claims in conjunction with her intentional tort claims.

### 3.    The impact rule does not bar the Plaintiff's negligence claims.

Chase also asserts that the "impact doctrine" bars Jacobini's negligence claims urging that bodily injury or property damage is an essential element to her negligence claims.  Def.'s Mot. Dismiss 14.  In Florida, however, the "impact rule" is not so rigidly applied as Chase describes. Rowell v. Holt, 850 So. 2d 474, 478 (Fla. 2003) ("The impact rule is not . . . an inflexible, unyielding rule of law so sacred that it must be blindly followed without regard to context.").

Florida recognizes that the impact doctrine is inapplicable to recognized torts in which the damages are predominantly emotional, such as defamation or invasion of privacy. Kush v. Lloyd, 616 So. 2d 415, 422 (Fla. 1992).  Furthermore, the impact rule does not apply where emotional damages result as a consequence of conduct that itself is a freestanding tort apart from any emotional injury.  Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 857

(Fla. 2007) (concurring opinion); see also Kush, 616 So. 2d at 422 citing Miami Herald Pub'l Co. v. Brown, 66 So.2d 679, 681 (Fla. 1953) (holding that mental suffering also constitutes recoverable damages in cases of negligent defamation).  Applying these standards to this case, there can be little doubt that emotional injury is most likely to occur when negligent mortgage servicing leads to an instruction to invade a person's home while that person is in the home.

Moreover, Florida's impact rule has a "hybrid" character, requiring either impact on one's person or, in certain situations, at a minimum the manifestation of emotional distress in the form of a discernible physical injury or illness.  Gracey v. Eaker, 837 So.2d 348, 355 (Fla. 2002).  Chase's agents breached Jacobini's home, broke off her locks, opened the door, and gained entry as evidenced by the alarm sounding in both break-ins.  The second entry constituted an even bigger breach and "impact" because the breach of the door pushed aside the china cabinet Jacobini placed in front of the door to try and bar entry after the first break in.  While this is not an actual impact on Jacobini personally, there was real impact on her house due to the breaking of the doorjambs, cutting of the chain lock, and the breaking of the door handle.  There would have been direct physical impact and a real confrontation but for Jacobini's very loud house alarm that scared the intruder away both times.  In this situation, Chase's conduct led to a physical manifestation that required an overnight hospitalization for elevated anxiety and blood pressure.  Jacobini's doctor even prescribed her sleeping aids to curb her inability to sleep due to these incidents.  Furthermore, the impact rule requirement should not apply because Chase acted in bad faith by ordering a second break intrusion after the filing of this federal lawsuit.  See Time Ins. Co. v. Burger, 712 So.2d 389, 393 (Fla.

1998) (holding that the impact rule does not apply to bad faith insurance claims).  Therefore, this Court should not find that the impact rules supports Chase's motion to dismiss all of Jacobini's negligence claims.

      **D.**    **Plaintiff's Claims for Invasion of Privacy and Intentional Infliction Of Emotional Distress Should Not Be Dismissed.**

Jacobini's claims for invasion of privacy (Count 7) and intentional infliction of emotional distress (Count 4) should not be dismissed because Chase incorrectly interprets Florida law as to the interdependence between the two torts.  Upon independent analysis of Counts 7 and 4, this Court should not dismiss either claim.

      **1.**    **Plaintiff's claim for invasion of privacy should not be dismissed because there is no requirement that Chase's physical invasion be considered extreme and outrageous because it was a physical invasion into her home.**

This Court should deny Chase's motion to dismiss as to Jacobini's invasion of privacy claim because Chase incorrectly applies the relationship between invasion of privacy and intentional infliction of emotional distress.  There are three categories of invasion of privacy in Florida: 1) appropriation of a person's name or likeness for commercial gain; 2) intrusion on seclusion; and 3) public disclosure of private facts.  Allstate Ins. Co. v. Ginsburg, 863 So.2d 156, 162 (Fla. 2003) (citations omitted).  As to the second category, an intrusion on seclusion involves "intrusion upon a plaintiff's physical solitude as by invading a plaintiff's home or other quarters . . . ."  Vernon v. Med. Mgmt. Assocs. of Margate, Inc., 912 F.Supp. 1549, 1561 (S.D. Fla. 1996).

Although Chase urges that Jacobini must show that this physical intrusion into her home was "extreme and outrageous," thereby adopting the analysis also required in her

intentional infliction of emotional distress claim, this is an incorrect statement of the law because Florida "at least" recognizes an actionable invasion of privacy when one invades another's home. Guin v. Riviera Beach, 388 So. 2d 604, 606 (Fla. 4th DCA 1980) ("Florida has recognized the tort of invasion of privacy, at least to this limited extent [of invading one's home]"); see Oppenheim v. I.C. Sys. Inc., 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010) (determining whether the intrusion in this circumstance was outrageous or extreme using the intentional infliction of emotional distress standard because the intrusion in this case dealt with phone calls made to the plaintiff and not a physical invasion of the plaintiff's home). In this case, there is little question that Jacobini's claim for invasion of privacy is one for intrusion into her home. Such an intrusion does not require an inquiry into its outrageous or extreme nature because Florida recognizes an invasion of privacy in such a circumstance. Guin, 388 So. 2d at 606. Furthermore, this invasion constitutes an invasion of privacy because Jacobini possessed a reasonable expectation of privacy in her home. See, e.g., Ward v. Casual Rest. Concepts Inc., No. 8:10-cv-2640-T-17TGW, 2011 U.S. Dist. LEXIS 69712, at *11 (M.D. Fla. 2011) (denying defendant's motion to dismiss claim for invasion of privacy where defendant's manager accessed wrongfully accessed photograph's on plaintiff's cellular telephone). Thus, Chase's motion to dismiss Jacobini's Invasion of Privacy Count should be denied because the intrusion consisted of a well-recognized invasion of privacy cause of action that does not require a finding of extreme or outrageous conduct.

        **2.**     **Plaintiff's intentional infliction of emotional distress claim should not be dismissed because this Court should find Chase's actions extreme and outrageous as a matter of law.**

This Court should also deny Chase's motion to dismiss as to Jacobini's intentional infliction of emotional distress claim because the facts given should be considered "extreme and outrageous." To survive a motion to dismiss an intentional infliction of emotional distress claim, the conduct giving rise to it must be "extreme and outrageous" in that it goes "beyond all possible bounds of decency and be regarded as atrocious and intolerable in a civilized community." Met. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985) (quoting Restatement (Second) of Torts §46 (1965)). While this is a question of law for the court, "[t]he case should be one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. (citation omitted).

The extreme and outrageous conduct alleged by Jacobini consists of Chase sending two contractors to break and enter into her home without notice, without permission, and without authorization on two distinct occasions. Florida law has long recognized that the right to be secure in one's home is a crucial and elevated right, a pattern most recently affirmed with the passage of the so called "stand your ground" law. See FLA. STAT. §§ 776.012, 776.032, 776.013(3) (2011). It is especially outrageous that Jacobini should be subject to such violent and forced entries that are the subject of the "stand your ground" statutes and in light of the protections provided to Floridians' homesteads through these statutes. See FLA. STAT. §§ 776.012, 776.032, 776.013(3) (2011). In fact, this conduct did not just happen once; it happened a second time, more than two (2) months after the filing of this federal lawsuit.

A reasonable person would further find Chase's behavior extreme and outrageous because Chase possessed apparent authority over Jacobini as her mortgage servicer, very similar to the unequal position in bargaining power and apparent authority existing in a landlord-tenant relationship.[1]  See Dependable Life Ins. Co. v. Harris, 510 So. 2d 985, 988, 988 n. 7 (Fla. 5th DCA 1987) (noting that unequal positions of the parties, especially in regards to a landlord-tenant relationship, may lead to a heightened degree of outrageousness when the party in power asserts its power and has the power to "severely damage the other"). In this circumstance, Chase's actions should be seen as extreme and outrageous because as a party with actual and apparent authority over such a significant aspect of Jacobini's life— namely the right to be secure in her home—it used its power twice to send in contractors without following the proper notice requirements or other legal proceedings.  As such, Chase asserted its positional power over Jacobini.

Furthermore, while Jacobini's subjective understanding does not control, the fact that she locked herself inside her bathroom and called 911 on (2) two distinct occasions supports a finding of extreme and outrageous conduct in this circumstance because it shows that the contractor acted in such a severely threatening behavior that it caused her to panic and call the police.  See U.S. ex rel. Crenshaw v. Degayner, 622 F. Supp. 2d 1258, 1283 (M.D. Fla. 2008) (explaining that severely threatening behavior supports a finding of extreme and

---

[1] In the present case, Chase is not in the status of landlord; it is the servicer of Jacobini's mortgage.  However, Florida holds landlords to a very high standard when seeking to gain possession on a default in rent. See, e.g., FLA. STAT. §83.59 (2011) (landlord shall recover possession *only* (a) in a civil action for possession; (b) where the tenant has surrendered the premises; or (c) when the tenant has abandoned the premises) (italics added). A landlord who violates any provisions of the residential tenancy laws is subject to serious penalties including actual and consequential damages, injunctive relief and any other remedy at law or equity. FLA. STAT. §83.67(6)-(8) (2011).

14

outrageous conduct); <u>see</u> <u>also</u> <u>Borden v. Saxon Mortg. Serv., Inc.</u>, No. 08-61851-CIV, 2010 U.S. Dist. LEXIS 101823, at *37-42 (S.D. Fla. 2010) (granting summary judgment against plaintiff's intentional infliction of emotional distress claim due to lack of outrageous behavior because mortgage company's agent only stood on the plaintiff's lawn to take pictures of the home and the plaintiff did not panic).  Moreover, the fact that Jacobini fell behind on her mortgage during a time of great economic recession throughout the country should not impact this Court's determination of Chase's extreme and outrageous behavior; this is not a classification that is known to take away an individual's rights to remain secure in their home as Chase implicitly asserts.  <u>See</u> Def.'s Mot. Dismiss 20-1; <u>see</u> <u>Gonzales-Jimenez De Ruis v. U.S.</u>, 231 F. Supp. 2d 1187, 1200 (M.D. Fla. 2002) (taking into great consideration the fact that the plaintiff's father was in a federal correctional facility in its determination of the outrageousness of the defendants' conduct).  Chase did not file a Complaint for Foreclosure, there is no evidentiary or pleading basis for a default, and certainly not one that would give it a basis to forcibly enter the home on two (2) occasions.

Jacobini submits to this Court that a member of the community would exclaim "outrageous!" upon hearing that her mortgage lender would send a stranger, not once, but again after the filing of a federal lawsuit, to break into her home with her inside without first filing a foreclosure lawsuit, obtaining a court order, or even giving proper notice.  For the preceding reasons this Court should deny Chase's motion to dismiss as to Jacobini's intentional infliction of emotional distress claim.

> **E.    Plaintiff's Claim Based Upon The Violation Of Florida Consumer Protection Act Should Not Be Dismissed Because There Is An Issue Of Material Fact.**

While Chase argues that Jacobini did not give notice as to the basis of Count 8, she clearly bases her cause of action on the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA" or the "Act") due to her use of the language "unfair and deceptive act in violation of Florida law." FAC ¶ 65. Despite Chase's argument to the contrary, Jacobini is not required to allege that Chase violated a specific provision of federal or Florida law to support her claim pursuant to FDUTPA. Losure v. Capital One Services, Inc., No. 2:05-cv-502-FtM-29SPC, 2006 U.S. Dist. LEXIS 3977, at *8 (M.D. Fla. 2006) ("[T]o state a FDUTPA claim, [a] plaintiff must plead that the conduct complained of was unfair and deceptive and that plaintiff was aggrieved by the unfair and deceptive act.").

FDUTPA allows a party to commence an action against any debt collector that engages in "unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1) (2011); see also FLA. STAT. §501.203(8) (2011) (broadly defining the term "trade or commerce). Courts are to liberally construe the Act to cover many types of practices occurring in consumer transactions and to protect the consuming public from those "who engage in . . . deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2) (2011); see also, Schauer v. General Motors Acceptance Corp., 819 So.2d 809, 812 (Fla. 4th DCA 2002).

Chase is not automatically exempt from FDUTPA's reach because "nothing in FDUTPA suggests that bank subsidiaries, affiliates or agents are necessarily exempt." Renfrow v. First Mortg. Am., Inc., No. 08-80233-CIV, 2011 U.S. Dist. LEXIS 63392, at *9 (S.D. Fla. 2011). But see (suggesting that FDUTPA does not apply to a bank when the liability is based on pure vicarious liability). Like in Renfrow, there is a question of fact as to

whether Chase falls under the statutory exemption because it is not clear whether the Chase alleged in the Complaint is the national bank or a subsidiary of the national bank. See id. ([T]he Court cannot make a factual determination at this time as to whether the Chase entity named as a defendant . . . is actually a national bank that falls within the statutory exceptions."). Additionally, Jacobini grounds her unfair and deceptive act cause of action upon a theory of direct liability against Chase. FAC ¶ 65 ("[The] failure to follow the statutory foreclosure process constitutes an unfair and deceptive act . . . ."). Therefore, this Court should not dismiss Jacobini's claim based upon a violation of the Florida consumer protection statute.

**F.      Plaintiff's Tort Claims Do Not Fail Because She Has Not Alleged "At Most" An Independent Contractor Relationship.**

Chase claims that Jacobini's tort claims should fail because she has alleged "at best" an independent contractor relationship between Chase and the parties who broke into her home. Def.'s Mot. Dismiss 25. This is incorrect. Jacobini's six tort claims based on vicarious liability properly state a claim upon which relief can be granted and also meet the pleading standard required in Iqbal and Twombly. 129 S. Ct. 1937; 550 U.S. 544. As such, this Court should not dismiss Counts 1 (trespass), 2 (negligence), 3 (negligent infliction of emotional distress), 4 (intentional infliction of emotional distress), and 7 (invasion of privacy).

> **1.      Plaintiff's vicarious liability claims do not fail because the pled allegations properly put forth the issue of whether the contractors acted as Chase's servants or as its independent contractors to the fact finder and even if the intruders acted as independent contractors, Chase is still vicarious liable for their actions.**

Jacobini's complaint does not allege an independent contractor relationship between Chase and the parties responsible for breaking and entering into her home because she never refers them as "independent" and consistently alleges that they worked on behalf of Chase. See, e.g., FAC ¶¶ 15 ("[T]he intruder was a contractor sent to her home by Chase . . . ."). Moreover, Jacobini's allegations sufficiently present an issue of material fact to the fact finder. See Burch v. Strange, 126 So. 898, 899 (5th DCA 1961) (describing the issue of whether an individual acts as an independent contractor or an agent as a question of fact for the fact-finder). Therefore, this Court should not dismiss the claims because there is a legitimate question of fact for the fact finder.

Even if this Court finds that Jacobini's allegations describe the contractors as independent contractors, Chase would still be liable for their actions because the work to be done under the contract between the parties was tortious in and of itself. See National Rating Bureau v. Florida Power Corp., 94 So. 2d 809, 812 (Fla. 1957) ("The independent contractor doctrine does not relieve the employer of responsibility for the negligent acts of the contractor where the work to be done under the contract, of itself, operates to injure the property of another."); National Rating Bureau, 94 So. 2d at 814 (O'Connell, J. concurring) ("[W]here the contract is for the commission of a tort the principal is responsible not only for the acts authorized by the contract, but for the collateral acts of the independent contractors as well."). The work to be done under the contract between Chase and the contractors was tortious because it involved breaking and entering into Jacobini's home without the filing of a foreclosure, obtaining a court order, or obtaining permission. See Burch, 126 So. 2d at 900 (extending this exception to cases involving the tort of trespass).

This Court should not dismiss the tort claims based upon vicarious liability because there is a material question of fact as to contractor's agency status and even if there is not such a question of fact, Chase would still be liable due to the well-recognized exception regarding the commission of tortious activities via an independent contractor.

### 2.   Plaintiff's vicarious liability claims also do not fail because Plaintiff properly pled her vicarious liability claims against Chase.

The tort claims alleged by Jacobini properly satisfy the pleading standards that require a plaintiff to provide the "grounds of his entitl[ment] to relief" beyond mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 545, and contains sufficient factual allegations to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949.

Jacobini properly identifies the conduct attributable to Chase in her complaint because Chase is the only defendant—LPS or the individual contractors themselves are not parties to this suit as currently alleged. FAC ¶ 3-5. In addition, the defendant Chase Home Finance ("CHF") does not exist. Def.'s Mot. Dismiss 10. Therefore, the use of the word "Defendants" throughout the complaint refers only to Chase and thus, Jacobini sufficiently identifies the conduct attributable to Chase.

Furthermore, while Jacobini recites that the "[d]efendants are directly and/or vicariously liable for the actions of their agents, contractors and/or employees" in each Count, this acts as a framework for each Count and is sufficiently supported by the extensive facts given in the "Factual Allegations Common To All Counts" section of the Complaint. See Iqbal, 129 S. Ct. at 1950 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations . . . ."). The facts as alleged

establish that two contractors sent by Chase broke into Jacobini's home due to the fact that Chase hired LPS who in turn hired the contractors.  FAC ¶¶ 1, 15.

As such, Counts 1 (trespass), 2 (negligence), 3 (negligent infliction of emotional distress), 4 (intentional infliction of emotional distress), and 7 (invasion of privacy) should not be dismissed because they meet the required pleading standard.

**G.    Plaintiff's Claims For Punitive Damages Should Not Be Dismissed Because The Complaint Properly alleges Fault As To Chase And Also Alleges Independent Torts Accompanying The Breach Of Contract Claims**

Jacobini properly alleges independent fault as to Chase for a finding of punitive damages against it arising from vicarious liability as to Counts 1 (trespass), 2 (negligence), 3 (negligent infliction of emotional distress), 4 (intentional infliction of emotional distress), and 7 (invasion of privacy).  In order to hold an employer vicariously liable for punitive damages, a plaintiff must allege and prove some "fault on the part of the employer which foreseeably contributed to the plaintiff's injury."  Mercury Motors Express, Inc. v. Smith, 393 So. 2d 545, 549 (Fla. 1981).

Jacobini properly alleges numerous instance of fault on the part of Chase throughout her Complaint.  See, e.g., FAC ¶¶ 17, 21 (failure to inform Jacobini that the lock installed on her front door by the bank's contractor was master keyed, which permitted any of the defendant's subcontractors and others to unlock her door and access her home with a universal key); FAC ¶ 10, 15 (alleging that Chase sent contractor to home without filing foreclosure or gaining court order).  These allegations of fault on the part of Chase are more than sufficient to hold Chase vicariously liable for punitive damages on the alleged tort claims.  See Mercury Motors, 393 So. 2d at 549 (noting that there is no requirement that an

employer's fault be willful and wanton); Horizon Leasing v. Leefman, 568 So. 2d 73, 75

(Fla. 4th DCA 1990) (finding sufficient fault where third party merely continued to use

services of defendant with "bad reputation"). In this circumstance, Jacobini alleges

substantially more serious fault than the plaintiff in Leefman, namely that Chase sent two

contractors to break into her home without filing a foreclosure proceeding, securing a court

order, or even giving proper notice. FAC ¶¶ 10, 15, 19. Additionally, Jacobini's allegation

that the contractors worked for Chase, and not describing them as "independent contractors,"

creates a question of fact for the fact finder to determine the agency relationship between the

parties. Leefman, 568 So. 2d at 75 ("The issue of agency is uniquely a question of fact for

the jury to decide."). Therefore, this Court should deny Chase's motion to strike the punitive

damages as to the tort claims pursuant to Fed. R. Civ. P. 12(f).

This Court should also deny Chase's motion to strike the punitive damages sought as

to the contract claims (Counts 5 and 6) because Jacobini properly alleged the requirements to

obtain punitive damages for contract breaches. While punitive damages generally are not

recoverable pursuant to a breach of contract, punitive damages can be sought if the breach is

accompanied by some action that "amounts to an independent tort." Griffith v. Shamrock

Village, Inc., 94 So. 2d 854, 858 (Fla. 1957). In this circumstance, Jacobini properly pled

that Chase's breach of contract is accompanied by several other independent torts. See FAC

Counts 1 (trespass), 2 (negligence), 3 (negligent infliction of emotional distress), 4

(intentional infliction of emotional distress), and 7 (invasion of privacy); cf. U.S. ex rel. Oreo

Debris, Inc. v. Ashbritt, No. 09-20458-CIV-TORRES, 2010 U.S. Dist. LEXIS 7561, at *3

(S.D. Fla. 2010) (qualifying Griffith with Florida's modern economic loss rule and

21

determining that a plaintiff needs to plead an explicit tort claim to maintain a viable punitive damages claim).[2]  Therefore, the Court should not strike Jacobini's punitive damages claims as to her breach of contract claims due to the independent torts accompanying the breach of contract claims.

## CONCLUSION

For the foregoing reasons, this Court should deny Chase's Motion to Dismiss.

Respectfully submitted,
On behalf of the Plaintiff,

DATE_July12, 2011

s/ Matthew D. Weidner
Matthew Weidner, Esq.
1229 Central Avenue
St. Petersburg FL 33705
727-894-3159
727-213-62356 (fax)
weidner@mattweidnerlaw.com

/s/ Joseph F deMello
Joseph F. deMello, Esq (via pro hac vice)
71 Main Street
Taunton, MA 02780
(508) 824-9112
josephdemellolaw@verizon.net

/s/ Carlin J Phillips
Carlin J. Phillips Esq (via pro hac vice)
13 Ventura Drive
Dartmouth, MA 02747
(508) 998-0800
cphillips@phillipsgarcia.com

### CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2011, I filed the foregoing motion with the Clerk of the Court through the CM/ECF system which will send a notice of electronic filing to counsel of record: Robert M Brochin, Esq. &  Marisa  Fortunati, Esq.,
July 12, 2011          /s/ Joseph F. deMello

---

[2] See infra §§ C(1)-(2) for discussion regarding Jacobini's tort claims and Florida's economic loss rule.