**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NANCY JACOBINI,**

                **Plaintiff,**

**-vs-**                                                          **Case No. 6:11-cv-231-Orl-31GJK**

**JP MORGAN CHASE, N.A., LPS FIELD**
**SERVICES, INC.; FULL STUFF, INC.;**
**TRUST FIELD SERVICES, LLC;**
**YEHUDA MARKOVITZ; and FABIAN**
**RIFICI,**

                **Defendants.**

## ORDER

This cause comes before the Court on three motions to dismiss, (Doc. 83) filed by Defendant LPS Field Services, Inc. ("LPS"); (Doc. 84) filed by Defendants Trust Field Services, LLC ("Trust Field") and Yehuda Markovitz ("Markovitz"); and (Doc. 87) filed by Defendants Full Stuff, Inc. ("Full Stuff") and Fabian Rifici ("Rifici"). Plaintiff Nancy Jacobini ("Jacobini") filed a single response (Doc. 105).[1]

In the Second Amended Complaint ("SAC") (Doc. 51), Plaintiff asserts seven causes of action, five against the instant Defendants: trespass (Count I), intentional infliction of emotional distress ("IIED") (Count II), invasion of privacy (Count V), and violation of the Fair Debt Collection Practices

---

[1] The factual background of this case was set forth in this Court's November 23, 2011 Order and will not be repeated here. (*See* Doc. 80).

Act ("FDCPA") 15 U.S.C. §§ 1692a(6), 1692f(6)(A), (Counts VI and VII). Defendants now move to dismiss each Count pursuant to FED. R. CIV. P. 12(b)(6).

**I. Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id*. at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

**II. Analysis**

   **A. Validity of the Mortgage Assignment**

As an initial matter, many of Defendants' arguments are premised on the existence of a valid mortgage between Jacobini and Chase. In the Response however, Jacobini claims that the assignment of the mortgage to Chase was invalid for several reasons, and that these deficiencies present issues of fact which cannot be resolved by the Court in a motion to dismiss.[2] For the reasons discussed below, the Court will reject this argument.

While it is true that factual disputes are not properly resolved at this stage in the proceedings, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila,* 326 F.3d at 1185. The SAC contains the following allegations regarding the assignment of Plaintiff's mortgage:

> 12. Ms. Jacobini currently has a loan and mortgage on her home. Chase claims to be the current holder of her mortgage and the loan appears to have been serviced in the past by CHF.
>
> 13. However, the purported, recorded Assignment of the mortgage indicates it was signed on November 23, 2010 with a retroactive effective date of September 16, 2010. The purported Assignment was a MERS assignment, it was not recorded until January 20, 2011 and it was drafted by the troubled law firm Ben-Ezra & Katz, P.A., with whom both Fannie Mae and Chase have ceased doing business.
>
> 14. The Assignment itself has mistakes on its face as it has the "assignee" assigning the mortgage to the "assignee."
>
> 15. The recorded Assignment demonstrates that Chase's interest in the mortgage, and its security interest in the property, had not arisen, if at all, until November 23, 2010, after the majority of the events at issue took place.

---

[2] Because this argument is raised for the first time in Plaintiff's response, Defendants have not addressed the issue.

(Doc. 51). In short, Plaintiff alleges that the assignment was invalid because, (1) it had a retroactive date of September 16, 2010, the assignment was not signed until November 23, 2010, and not recorded until January 20, 2011;[3] (2) it was drafted by a "troubled law firm"; (3) it had a scriveners error on its face.[4] The last two allegations are inconsequential. A minor scriveners error does not invalidate an otherwise valid assignment, (*See* Doc. 80), and absent some other specific allegations, the fact that a "troubled law firm" drafted a document is irrelevant. Finally, there is nothing to suggest that the retroactive date was ineffective, or somehow invalidated the assignment. Viewing these allegations as a whole, and taken in a light most favorable to the Plaintiff, there is nothing to suggest that the assignment was invalid in any way.

### B. Counts VI and VII - FDCPA

Defendants move to dismiss Counts VI and VII on the basis that they do not qualify as "debt collectors" under the statute and because Chase had a "present right to possess" Plaintiff's home. To prevail on a FDCPA claim, a plaintiff must show that a defendant is a "debt collector" and that the defendant engaged in some act or omission prohibited under the statute in attempting to collect a consumer debt. *Madura v. Lakebridge Condominium Ass'n, Inc.*, No. 8:07-cv-02274-T-17EAJ, 2009 WL 536537 at *2 (M.D. Fla. Mar. 3, 2009).

---

[3] To be precise, Plaintiff does not appear to assert that this invalidates the assignment as a whole. Rather, she claims that since Chase's interest in the mortgage did not arise until after the relevant events in this case, it cannot invoke the contract as a shield for its actions. As the Court noted in a previous Order however, Plaintiff "cannot simply invoke the contract when it suits her, and disclaim it when it does not." (Doc. 80 at 8).

[4] In her response, Plaintiff contends that MERS did not have the authority to assign her mortgage. These allegations however, are not included in the SAC and will not be considered by the Court.

"Debt collector" is defined in the FDCPA as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term does not include (A) "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor"; or (F) "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; . . . or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C. § 1692a(6)(A) & (F).

Defendants argue that "repossession agents" acting on behalf of secured creditors are excluded from the definition of "debt collectors." 15 U.S.C. § 1692a(6)(F)(iv); *see Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 716-17 (M.D. Fla. 1997). However, as the Sixth Circuit noted in *Montgomery v. Huntington Bank*, "the legislative history confirms that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA for all purposes *except for the prohibitions described in § 1692f(6)*." 346 F.3d 693, 700 (6th Cir. 2003) (emphasis added). The statute creates a specific exception for repossession agents in § 1692a(6): "For the purpose of section 1692f(6) of this title, such term ["debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692f(6) states,

> [a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if-- (A) there

is no present right to possession of the property claimed as collateral through an enforceable security interest . . .

In this case, Plaintiff has alleged that Chase had no "present right" to possession of her property because, *inter alia*, it had not yet initiated foreclosure proceedings and did not comply with the contractual requirements. (*See* Doc. 40 at 9). Accordingly, Plaintiff has sufficiently alleged a cause of action under § 1692f(6).[5]

Next Defendants claim that the conduct in question was "incidental to a bona fide fiduciary obligation." In support, they cite to several cases which hold that property managers are exempt from the FDCPA because they have a "fiduciary obligation to collect fees from association members." *See Madura*, 2009 WL 536537 at *3; *Reynolds v. Gables Residential Servs., Inc.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2006). Admittedly, Defendants were not property managers. They contend however, that the conduct in question was incidental to the fiduciary duty they owed to Chase as its agents. (Doc. 83 at 8). Although it is true that an agent may owe a fiduciary duty to its principle, Defendants in this case had only a *contractual duty* to "secure and repossess" Plaintiff's home. That contractual duty has no relationship to any fiduciary duty Defendants may have owed to Chase.

**C. Count I - Trespass**

*1. Consent*

Under Florida law, Trespass to real property is defined as "an unauthorized entry onto another's property." *See Pearson v. Ford Motor Co.*, 694 So.2d 61, 69 (Fla. 1st DCA 1997). While trespass is an intentional tort, "the requisite intention is to enter upon the particular land in question,

---

[5] For this reason the Court also rejects Defendants' argument that the conduct in question did not violate the FDCPA.

irrespective of whether the actor knows or should know that he or she is not entitled to enter." 75 AM. JUR. 2d Trespass § 21 (2011); *see also* 55 FLA. JUR. 2d Trespass § 1 (2011).[6] Consent however, is an absolute defense to trespass, *Pearson*, 694 So.2d at 69, provided that "the acts of the party accused of the trespass do not exceed, or are not in conflict with, the purposes for which such consent was given." *Pitts Sales, Inc. v. King World Productions, Inc.*, 383 F. Supp. 2d 1354, 1365 (S.D. Fla. 2005) (citing *Fletcher v. Florida Publishing Company,* 319 So.2d 100, 104 (Fla. 1st DCA 1975)).

Defendants argue that Jacobini consented to the trespass in question because the mortgage states that the "Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause." (Doc. 30-2 at 8). The SAC alleges however, that no such notice or reasonable cause was provided. As the Court has held in previous Orders, Plaintiff sufficiently alleges that Defendants were acting outside the scope of consent. (*See* Docs. 40 & 80).

*2. The Economic Loss Rule*

Further, Defendants argue that Count I should be dismissed based on the economic loss rule because Plaintiff has a claim for breach of contract against Chase. The economic loss rule prevents parties in contractual privity from suing in tort to recover purely economic damages. *Indemnity Ins. Co. Of N.A. v. American Aviation, Inc.,* 891 So.2d 532, 537 (Fla. 2004). As the court in *Indemnity* noted, "[u]nderlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process." *Id*. at 536.

---

[6] To the extent Defendants move to dismiss this Count because they lacked intent, that motion is denied because it is based on a misunderstanding of the requisite intent.

Although Defendants are admittedly not in direct contractual privity with the Plaintiff, Defendants argue that "an agent of a corporate party to a contract, acting within his capacity and scope as an agent, cannot be considered a separate entity or third party outside of the contractual relationship." (Doc. 84 at 11; *see also* Doc. 83 at 12). In support, they cite *Vesta Constr. and Design, LLC v. Lotspeich & Assoc., Inc.*, which held that "when suit is barred against a corporation by the contractual privity economic loss rule, the contracting party cannot bypass the rule by suing corporate employees for their negligent performance of the contract." 974 So.2d 1176, 1180(Fla. 5th DCA 2008). This case is materially different however because Defendants are not "corporate employees" of Chase. *See, e.g., Luigino's Int'l, Inc. v. Miller*, 311 F. App'x 289, 294 (11th Cir. 2009) ("We recognize that contractual privity may not be required when a tort action is barred against a corporation under the economic loss rule and its corporate employee is being sued for the same tortious conduct.") (citing *Vesta*, 974 So.2d at 1181).

### 3. Damages for Emotional Distress in Trespass Actions

Generally, "[t]he usual measure of damages for trespass to real property is the difference in value of the property before and after the trespass." *Horn v. Corkland Corp.*, 518 So.2d 418, 420 (Fla. 2d DCA 1988) (citing *Clark v. J.W. Conner & Sons, Inc.*, 441 So.2d 674 (Fla. 2d DCA 1983)); *see also Bolus v. Morrison Homes, Inc.*, No. 8:08-cv-1957-T-23TBM, 2009 WL 4730601 at *4 (M.D. Fla. Dec. 9, 2009). Damages for emotional harm are "outside the scope of the proper measure of damages for trespass." *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. 4th DCA 1998). Accordingly, Defendants motion to strike is granted to the extent Plaintiff seeks damages for emotional distress in Count I.

**D. Counts II and V - IIED and Invasion of Privacy.**

This Court has previous held that the conduct alleged in this case is sufficiently outrageous and extreme to support a claim for IIED and invasion of privacy. (Doc. 40 at 9). To the extent Defendants move to dismiss on this basis, those motions are denied.[7]

In light of the foregoing, it is **ORDERED** that Defendants' motions to dismiss (Docs. 83, 84, 87) are **GRANTED** to the extent they move to strike Plaintiff's claim for damages from emotional distress in Count I, but **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 26, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

---

[7] To the extent Defendants move to dismiss these Counts based on the economic loss rule, those motions are denied as well for the reasons outlined *supra*.